RECEIVED

APR 27 2015

By_____

IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF PENNSYLVANIA

Bryan J. Shine

V.

Montgomery County PA, Montgomery County
Correctional Facility, PrimeCare Medical INC,
Montgomery County District Attorney's Office,
Upper Providence Township PA, Limerick Township PA,
Julio Algarin, Warden, Margaret Carrillo MD,
Risa Vetri Ferman, District Attorney;
John Nicoline, Upper Providence Police Officer;
Matthew Tobin, Upper Providence Police Officer;
Correctional Officers John/Jane Does;
Nurses John/Jane Roes;
"VJ" Higgins, Montgomery County Detective,
District Attorney's Office;
Montgomery County Detective James Doe;
Police Officers John/Jane Roes;
Robert Carter

COMPLAINT **15    2354**

under the Civil Rights Act
42 USC 1983

JURY TRIAL DEMANDED

I. THE PARTIES

Bryan J. Shine, Plaintiff, is a United States Citizen who resides in the
township of East Vincent, Pennsylvania. He was arrested by the Upper
Providence Police, charged by the DA, incarcerated in Montgomery County
Correctional Facility, from April 23 - May 1, 2013. He was the victim
and was harmed by the actions and/or inactions of the defendants in this
complaint.

Montgomery County Pennsylvania is in the southeastern corner of Pennsylvania
and a suburb of Philadelphia. It is administered by an elected board of
county commissioners.

Montgomery County Correctional Facility is located in Eagleville PA.
It is a wholly owned and operated facility of Montgomery County. It is
administered by the warden, his assistants, deputies, assigns and staff
both paid and volunteer. It is designed for the pre-trial and post-trial
confinement of male and female persons.

PrimeCare Medical INC. is a privately held corporation under the laws
of Pennsylvania and serves as the paid sole contractual provider of all
medical care, needs, and services to the inmate population at MCCF. It
holds a contract in excess of $5 million dollars per annum.

Montgomery County District Attorney's Office is an administrative govern-
mental office to administrator justice and ensure the faithful execution
of the laws within Montgomery County, PA.

Upper Providence Township, PA is a political subdivision of Pennsylvania
and Montgomery County. It is responsible for the supervision, training,
support, and discipline of its police officers in its employ.

SHINE v. MONTGOMERY County PA., et. al.                                    Pg. 2

Limerick Township, PA is a political subdivision of Pennsylvania and
Montgomery County. It is responsible for the supervision, training,
support, and discipline of its police officers in its employ.

Julio Algarin, Warden of Montgomery County Correctional Facility (herein
after MCCF), is ultimely responsible for all issues at MCCF and is to
support, train, supervise and discipline the correctional officers and staff
at MCCF. He is being sued in his official, professional and individual
capacities.

Margaret Carrillo, MD; is the director of PrimeCare INC at MCCF. She is
ultimely responsible for all medical care, needs, and services provided
by herself and her subordinates, and assigns. She is being sued in her
official, professional, and individual capacities.

Risa Vetri Ferman, Esq; is the elected district attorney of Montgomery
County PA. She is ultimely responsible for the administration of justice
in Montgomery County. She is required by law, practice, and professional
responsibility to advocate for victims of crime and to prosecute the law
without favor to anyone - including law enforcement. She is ultimely res-
ponsible for the investigations, actions, inactions, refusals to prosecute,
care and services provided by herself and her deputies, assistants,
employees and assigns whether paid or volunteer. She is responsible to
support, train, supervise, and discipline her staff and all law enforcement
persons within the county. She is being sued in her official, professional,
and individual capacities.

John Nicoline, is a sworn law enforcement officer of Upper Providence
township, PA. He is being sued in his official and individual capacities.

Matthew Tobin, is a sworn law enforcement officer of Upper Providence
township, PA. He is being sued in his official and individual capacities.

Correctional Officers John/Jane Does are various and numerous sworn law
enforcement/correctional officers of PA and are employed by the county at
MCCF. They are answerable to the Warden, thw county, and the district
attorney. They are being sued in their official and individual capacities.
Their names and badge numbers are unknown to the plaintiff at this time.
They are however known to the other defendants and within the records and
discovery of MCCF, the county, and District Attorney etc.

Nurses John/Jane Roes are various and numerous sworn medical staff members
of PrimeCare INC at MCCF. They have a professional and personal responsiblity
to care for anyone. They are being sued in their official, professional, and
individual capacities.

"VJ" Higgins is a detective assigned to investigate this case. He is an
employee of the district attorney's office and the county and answers
directly to Defendant Ferman. He is being sued in her official, professional,
and individual capacities.

SHINE v. MONTGOMERY County PA., et. al.                          Pg. 3

Montgomery County Detective James Doe is an unnamed individual who was
assigned with defendant VJ Higgins to investigate this case. His name
and badge number are known to the district attorney's office. He is an
employee of the the district attorney's office and the county and answers
directly to Defendant Ferman. He is being sued in her official, professional,
and individual capacities.

Police Officers John/Jane Roes; are various and numerous sworn law
enforcement officers of PA and are employed by the county in various
divisions. They are answerable to their respective chiefs, their townships,
the county and Defendant Ferman. Their names and badge numbers are unknown
to the plaintiff at this time. They are however known to the other defendants
and within the records and discovery of the county and the district attorney's
office and defendant Ferman. They are being sued in their official,
professional, and individual capacities.

Robert Carter, is a young black male who at the dates in this complaint
was confined to MCCF and the custody of Defendant Algarin. He was the subject
to a criminal complaint in the custody of the DA's office, Defendant Ferman,
Defendant Higgins, and defendant James Doe. He committed various crimes
upon the plaintiff. He is being sued in his individual capacity.


II.   JURISDICTION AND VENUE

This court has jurisdiction and venue to all claims in this complaint which
arise from the actions and/inactions of various governmental entities,
businesses, official, professional and individual private citizens who are
within the territorial boundaries and jurisdiction of this court. All
claims are constitutional and statutory and civil rights actions and claims
under the federal and state constitutions, as amended; the Civil Rights Acts
at 42 USC 1983, the Prison Rape Elimination Act of 2003 and all other actions
in law and equity. Jury trial is demanded.

III.   STATEMENT OF CLAIMS

1) On or about April 23, 2013 at approxiamately 2AM plaintiff was stopped
by Upper Providence Police Officer John Nicoline, defendant Tobin and
numerous defendant police officers John/Jane Roes for suspicion of DUI. He
was stopped at the underpass of route 422 in Limerick Township PA. For no
reason and without provocation he was forcefully ripped out of his vehicle
through the window. He was harassed, assaulted, beaten and "tased". He was
thrown to the ground. He had his face repeatedly pushed into the roadway.
He was handcuffed. He was dragged up, forced to his knees, restrained by
various officer John/Jane Roes and tased again.

2) He was transported to Phoenixville Hospital by defendant Nicoline. He
submitted to a blood draw.

3) He was transported by defendant Nicoline to MCCF. He was booked, photos
were taken. He was charged with various offenses and remanded to the custody
of MCCF, defendant Montgomery County, and Defendant Algarin and defendants
Correction officers John/Jane Does. He was in MCCF at approximately 3AM.

SHINE v. MONTGOMERY County PA., et. al.                                    Pg.4

4) At about 10am on or about April 23, 2013 the plaintiff was arraigned
via video court before magisterial district justice Walter Gadzicki.

5) MDJ Gadzicki set bail at 10% of $5,000.00. At no time was the
plaintiff afforded the opportunity to call for bail.  By policy and
practice MCCF does not provide inmates with the opportunity to call
for bail.

6) Plaintiff was held in a holding cell with various other persons for
a day.

7) Plaintiff was seen by a Nurse Jane Roe on or about April 24, 2013
who refused his request for treatment to his knees and his body having
suffered at the hands of the various police officers John/Jane Does,
defendant Nicoline and defendant Tobin. Plaintiff was and remains a
victim of police brutality. Nurse Jane Roe 1. denied him aid for his
injuries. She refused him detox medicines and his prescription medications.

8) By the various statements plaintiff made to Nurse Jane Roe 1
and various other medical Nurse John/Jane Roes and for various medical
reasons the plaintiff was classified as needing constant and close
supervision and monitoring and was classified to suicide watch in the
medical department.

9) Against international and national standards and in violation of
ethical, moral, medical, and/or security standands the plaintiff was
stripped naked, placed in a "turtle suit", taken to the medical unit and
was placed in a cell with under suicide watch with another inmate.  By
information and belief that inmate is a black male named Robert Carter.

10) On or about April 25, 2013 as the plaintiff was still physically
medically and emotionally sufffering from acute drug/alcohol withdrawal
under "suicide watch", Robert Carter began to harass the plaintiff.
The plaintiff was not being watched by any member of the staff and was
not provided any medical treatment.

11) Carter began to dance about the cell naked. He began to repeatedly
stroke his penis. He urinated in the cell's sink.

12) The plaintiff began to scream for assistance from staff. He went to
the cell door and begged for help. The various correctional officer John/
Jane Does ignored the plaintiff.

13) By information and belief, policy and practice MCCF does not have
any type of audio/visual surveillance systems of the cells in the medical
unit, suicide watch, or for that matter within any section of the prison.

14) By information and belief, policy and practice the county routinely
underfunds and understaffs MCCF. As a result of these actions and/or
inactions MCCF and defendant Algarin do not provide the correctional
officers with the required level of safety, security, and wellbeing.
Further, they fail to provide the required level of support to the
correctional officer John/Jane Does. The defendants utterly failure,
refuse to provide and/or unwilling to "buck" the system and defend inmates
especially those under suicide watch. To wit, the CO's are so understaffed
and/or lacking in morale, motivation, and/or support they are unable and/or

SHINE v. MONTGOMERY County PA., et. al.

Pg. 5

unwilling to actually watch those inmates on suicide watch. Therein, they fail to provide any safety whatsoever.

15) ON or about April 25, 2013 the plaintiff was a victim of their inactions. He was under suicide watch but was neglected medically and professionally by PrimeCare, defendant Carrillo, Nurses John/Jane Roes, MCCF, defendant Algarin, and defendants Correctional Officers John/Jane Does, and the defendant Montgomery County.  By the policies, practices, procedures and protocols of MCCF is this neglect done.

16) By information and belief, policy and practice MCCF, the county and the warden regularly and routinely misclassify minor offensive inmates with major offensive inmates, pre-trial persons with post-trial persons. In other words persons charged with minor offenses and misdemeanors and facing at most a short term in prison at most are routinely and regularly housed with convicted felons and those persons facing at mininum years in state and/or federal custody.

17) On or about April 25, 2013, the plaintiff while "under suicide watch" and not being watched and housed with another inmate against a host of international and national standarts, rules and protocols,  and laws was touched and assualted.  Plaintiff was touched by Carter on his legs, arms, chest, face and genitals.  Plaintiff again and repeatedly screamed for help.  Because of the policies, practices, routine procedures and/or protocols of the county, MCCF, Defendant Algarin and various CO John and Jane Does, the plaintiff's pleas for help and his screams went answered.

18) Plaintiff was not watched, was not aided and was not recorded on any audio or visual equipment.  Plaintiff has suffered and will continue to suffer for the remainder of his life from the neglect of the defendants.

One of the wealthiest counties in Pennsylvania, refused to provide its warden, its correctional officers and the MCCF with one of the most prolific, basic and rudimentary objects of life in the 21st century - the video camera.

19) Carter, knowing that the Plaintiff's screams were in vain, and the staff derelict in their duty to protect became more belligerent.  Carter still naked and fondling himself began to aggressively touch and punch the plaintiff.  The plaintiff renewed his screams.

20) The plaintiff's penis was repeatedly touched by Carter.  The Plaintiff was digitally penetrated and raped by Carter.

21) Carter repeatedly punched the plaintiff on his face and his chest. Carter punched the plaintiff is his face forcing the plaintiff's head into the concrete wall of the cell.  The Plaintiff's eye was swollen, his nose bleeding profusely, his whole chest was covered in blood.

SHINE v. MONTGOMERYCounty, PA., et al.                                    Pg.6

22) Plaintiff was able to break free and went to the cell door suffering,
covered in blood and raped.  Only then did the CO John/Jane Does provided
any semblance of assistance.

23) The plaintiff was forcefully removed by various CO Does and taken
to the lower level of the Medical unit into the men's waiting room area.

24) A CO John Doe took the a number of pictures on the plaintiff.

25) Various Nurse John/Jane Roescame into the room with various CO John/
Jane Does.  The plaintiff was given gauze pads and rolls and told to
"cleanup you fat fuck".  The plaintiff, physically shaking, blooded and
in shock struggled to clean himself and was told to "lose the suit" by
a CO Jane Doe.  The plaintiff was now naked in a room full of people
bloodied whilst pictures were being taken of him.

26) A black nurse Jane Roe attempted to assist the plaintiff in cleaning
himself of blood.  This nurse was told to "stop helping him" by the
same CO Jane Doe.  The plaintiff begged for help.  The nurse continued
to assist the plaintiff. She was told to stop again forcefully by the
CO Jane Doe.  Nurse Jane Roe state "this is bullshit", as she was physically
removed by various CO John/Jane Does.

27) The plaintiff begged to be taken to the hospital. The nurses and the
CO's refused.  Plaintiff begged for medications and at least an ice pack
for his swollen eye and face.  He was told no by the CO's, "you're on
suicide watch you'll choke to death on the ice".  The nurse gave him
an ice pack and it was removed by a CO.  Primecare has an inherent
interest in refusing medical care and hospital admissions for the sake
of protecting their profit margin above the county funding.

28) The plaintiff continued to clean himself up.  The material used to
do this cleanup filled a medium sized trash bag.  The plaintiff watched
as several CO's throw this bag into a larger bag along with the blooded
"turtle suit".  The plaintiff stated numerous times he needed the items
preserved for his intended suit.  A CO stated "good luck proving it".

29) The plaintiff was told in no uncertain terms by the same CO Jane
Doe and two CO John Does to "shut the fuck up", "Go to Hell" inter alia.

30) Plaintiff was placed in a different cell with, yet again, another
inmate in the medical unit by several CO does.  He was not seen the
remainder of the day or night by anyone from medical or security or from
the County.

31) On or about April 26, 2013 Plaintiff was taken by CO John Doe to see
a MCCF social worker.  Said social worker was an older black gentleman
by the name of Mike.  Mike related that "this stuff happens all the time"
and the plaintiff that to fill out a report of what happened the day
before.  Mike informed plaintiff that the assailants name was "Robert
Carter"

SHINE v. MONTGOMERY County, PA., et al.                          PG 7.

32) Mike assured Plaintiff of his safety and assured him repeatedly that
the report would get into the appropiarate staff members and the warden.

33) Plaintiff was seen by nurses on various days.  A nurse Jane Roe ordered
xrays.  The same nurse provided an ice pack to the plaintiff and stated
he had to hid it from the CO's saying "security before medicine in this
dump".

34) At various times from April 26 to May 1, 2013 the plaintiff was told
by various CO's "suing are ya? Good luck"  On various days plaintiff was
only provided with one and sometimes only two meal trays.

35) Plaintiff was going from hi cell to the nursing rooms several times
over the next few days.  At one point he noticed a piece of paper similiar
in form to the one he had written before in Mike's office hanging on the
staff bulletin board.  To his horror the paper - clearly a photocopy -
was "the report" he had written.  A CO John Doe walked by, read that the
plaintiff intended to sue, and ripped the report off the board saying to
the extent "we'll have fun with him".  All the while the Plaintiff
sat waiting for the nurse in the hallway.

36) Plaintiff repeatedly asked for mediciations and was repeatedly denied.
He repeatedly asked to see the doctor to which he was repeatedly told
"we don't do that here".  Plaintiff continued to suffer in pain, hunger
and embarassment.

37) On or about April 27, Plaintiff had his picture taken again by the
admissions office of MCCF.

38) On or about May 1, 2013 Plaintiff was called again to the office
of MIke the social worker.  During the visit Plaintiff was afforded the
opportunity to call a bail company - ABC Bonds - who in turn call the
plaintiff's parents to post bail. Mike wanted to follow up with the
Plaintiff's complaint and was told he had to wait a few more days before
he could appeal any decision to a higher level.

39) The plaintiff was bailed out on bond on May 1, 2013.  Just a few
hours had lapsed from the time he called until the time he was bailed out.

40) On or about May 4, 2013 Plaintiff contacted the Montgomery County
District Attorney's office via an online webpage for crime tips and
discribed what had happened to him at MCCF.

41) VJ Higgings, Montgomery County detective contacted the Plaintiff and
asked to meet at teh Royersford police department station to discuss
the plaintiff's statement.

42) On or about May 7, 2013 Plaintiff met with VJ Higgins and an unnamed
Montgomery COunty detective James Doe at the Royersford police station
and made his formal complaint.  Plaintiff was repeatedly assured by
defendant Higgins and defendant James Doe that they would fully and
fairly investigate the statement and the crimes.

43) Defendant Higgins and Defendant James Doe lied.  THey never again
contacted the plaintiff.  By information an dbelief they were instrut-
mental in destroying evidence directly related to this matter.

SHINE v. MONTGOMERY County, PA, et al .                          PG 8.

44) Defendant Ferman and the MOntgomery County DA's office refused to
do anything with Plaintiff's complaint. They along with defendants
Higgins and James Doe simply sent a letter months later to the plaintiff
stating that "after an investigation" "nothing happened". They never
interviewed anyone, they reviewed no evidence, they conducted no invest-
igation, they investigated themselves and their friends in a clear
and glaring violation of protocol and concluded nothing was needed to be
done.They all have a vested interest in concluding nothing happened.
To concluded otherwise would make themselves, friends, and the county
liable to suit.

45) Further they never contacted the plaintiff again.  The plaintiff
repeatedly contacted they DA's office and defendant Ferman asking repeatedly
for help and reconsideration. He was ignored. The DA's office simply
sent another letter stating that a full and fair investigation took place and
again nothing happened.

46) By information and belief, policies and practices the plaintiff's
complaint was dismissed univestigated because of misdemeanor convictions
and his present charge of DUI.  The plaintiff and others similiarly
situated routinely have their complaints and concerns about the conditions
and events within MCCF because the district attorney's office refuses
to give any semblance of respect to the inmates.  Defendant Ferman is
directly responsible for such actions and/or inactions. She orders her
staff to never pursue charges resulting in or connected to MCCF, law
enforcement, county employees, etc.  Further the dendants had all the
evidence they needed and they still refused to do anything.  The defedants
did however do the opposite.  They destroyed evidence, resfused to
investigate and ignored the plaintiff's right to know law requests.
All the while knowing full well the plaintiff intented to sue them in
federal court.

47) The defendants would rather have the plaintiff suffer abuse and rape
in their custody then to fulfill their official duties and actually
charge their friends and co-workers.  The refused to fully and fairly
investigate the plaintiff's complaint.  For it was and remains far
easier for defendants Ferman, Algarin and all the others to collect
their paychecks, neglect their duties and laws they swore an oath to
uphold, and simply say they did their jobs. Knowing full well they sat on
their hands and did nothing to defend the plaintiff - a victim of crime.
They violated their own rules, policies, protocols, customs, and the
law.  They used the full power of the state to re-victimize the
plaintiff and dismiss him.

48) All the defendants are instrutmental in their continous harm to the
plaintiff, their dereliction of duties and their frauds perputrated
under the color of law and in their individual capacities.  PrimeCare
medical is liable seeing that outside medical services, and any medical
services to the plaintiff would decrease the profit.  Defendant Carrilo
has sole discretion over the treatment or non-treatment of the inmates
and the plaintiff. She repeatedly refused to see the plaintiff.

49) All of these actions and/or inactions area anathema to justice,
morality, obligation, and violations of the plaintiff's rights.

SHINE v. MONTGOMERY County, PA. et al.                                    Pg. 9.

The defendants did knowingly, willingly, and voluntarily with abhorrent
and malicious intent, belligent and reckless abandon, being depraved
of all morality, devoid of all humanity and repugnantly indifferent to
the Constitution and laws of the United States of America, the Constit-
ution and laws of the Commonwealth of Pennsylvania, the laws of nature
and the infallible laws of God Almighty himself; did cause, construct,
construe and orchestrate a criminal and tortious conspiracy to oppress
the civil rights of the Plaintiff in their official, professional and
individual capacities.

IV. INJURIES

50) The Plaintiff has suffered and will continue to suffer for life
from the actions and/or inactions of the defendants. To wit: police
brutality, rape, post traumatic stress disorder, mental health issues,
blood loss, swollen left eye, scars about his person, recurring and
severe headaches, hearing loss, effects of the loss of consciousness,
concussions, aggravated psychological, mental and psychosocial disorders,
pain,suffering, embarassment, loss of enjoyment of life, loss of
companionship, loss of employment and educational opportunities, and
intentional infliction of emotional duress, inter alia.

V.    EXHAUSTION OF ADMINISTRATIVE REMEDIES

51) Plaintiff was discharged from MCCF on May 1, 2013 on bail. From that
day no administrative remedies were or remain "available" as required
under the Prison litigation reform act of 1995 at 28 USC 1915 and
42 USC 1997é(a).

VI.   RELIEF

52) Plaintiff restates and realleges all of the preceeding allegations
and reuqest this honorable court to convene a jury, and grant the
plaintiff any and all relief permitted under the Civil Rights Acts,
the Prison rape elimination act of 2003, federal, state and common
laws relating to law enforcement, medical, professional and attorney
malpractice and all other relief in law and equity.

53) Further plaintiff demands a wholesale structural and institutional
changes within MCCF, the county and the district attorney's office. To
include the installation of state of the art audio and visual surveillance
equipment covering each and every inch of the MCCF. The whole staff will
be re-trained. All officers involved in the events of this complaint
with be terminated with cause. Substanially more staff members will
be hired to bring the staff to inmate ratio below I to 5.  Every
inmate will have an individual cell.  The plaintiff and three other
persons will be appoint for life to teh board of inspector of MCCF and
be paid for life.  The district attorney's office will establish a field
office at MCCF to be staffed 24 hours a day 7 days a week every day of
the year. Every employee/volunteer of the district attorney's office
will volunteer for confinement within MCCF or another correctional
facility for at least one week every two years. Plaintiff will have
full authority on the assignment, placement, locations, and parole of
each and every such person.

SHINE v. MONTGOMERY, PA. et al.                                              Pg. 10.

54) Plaintiff demands the wholesale change in food quality and commissary.
The MCCF will establish a prison farm for the production of produce.
The county will re-establish the chain gang teams on roadways, highways,
parks etc. throughout the county.. The county will eliminate all fats,
sugars and red meats from the diets and commissary. The county will
establish required weight loss and weight managment teams for every
inmate.

55) Plaintiff demands the cancellation of PrimeCare Medical INC's
contract and a wholesale reordering of the medical staff and the medical
treatments of the inmates.

56) Plaintiff demands any and all monetary compensation to which he may
be entitled from the defendants in their individual capacities excluding
the governmental entities.

57) Plaintiff demands payment by defendants for all medical treatments
and therapies for his life.

58) Plaintiff demands that each and every defendant issue a public
apology via every sourse of social media and news outlets throughout
the Philadelphia metro region. Including front page above the fold
statements in the Philadelphia Inquirer.

59) Plaintiff demands that each and every defendant resign from office
and permanently surrender each and every professional, legal, medical
licenses, law enforcement badges and/or commissions within the C
Commonwealth of Pennsylvania and each and every Commonwealth, Repulbic,
State, Terroritory, and Trustee Protectorate of the United States of
America and each and every member nation state of the British Commonwealth
of Nations.  Plaintiff demands each and every defndant to be barred
for life from holding any public office or trust, paid or voluntary.

60) And all other relief to which he may be entitled.

IN RE: Shine v. Montgomery County, et.al.

    I, Bryan J. Shine, declare under penalty of perjury that the foregoing complaint in the above entitled action is true and correct to the best of my knowledge and belief.
    Respectfully submitted to this honorable court the 22nd day of April, 2015.

Bryan J. Shine
9 Lake Drive
Spring City PA 19475-2722

IN RE: Shine v. Montgomery County et. al.


     I,Bryan J. Shine, declare under penalty of perjury that I have no income for the past 5 months, I have $35,000.00+ in student loan debt, I have no real estate, automobiles, or equitable securities to pay the filing fee in this case.
     I further declare that on this 22nd Day of April, 2015 I am delivering this complaint to prison authorities to be mailed to the Clerk's office of the United States District Court for the Eastern District of Pennsylvania at Philadelphia.
     Respectfully submitted to this Honorable Court.

Bryan J. Shine
60 Eagleville Road
Eagleville PA 19403